No. 26-1051

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

NATHAN ZAIN OMAR,

*Defendant/Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____

BRIEF OF APPELLANT OMAR

_____

JOSEPH MEDICI
Federal Public Defender SDOH

Kevin M. Schad
Attorney for Appellant
Appellate Chief
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
513.929.4834
Kevin_schad@fd.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................................ 1

STATEMENT OF THE ISSUES .......................................................... 2

STATEMENT OF THE CASE ............................................................ 3

SUMMARY OF THE ARGUMENT ...................................................... 8

ARGUMENT ........................................................................... 9

I.     THE DISTRICT COURT SHOULD HAVE RELEASED OMAR
      PENDING HIS REVOCATION, AS NEW EVIDENCE PROVIDED
      CLEAR AND CONVINCING PROOF THAT HE WAS ENTITLED
      TO RELEASE .................................................................. 9

CONCLUSION ......................................................................... 16

CERTIFICATE OF COMPLIANCE .................................................. 17

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Mallory v. Eyrich,*
922 F.2d 1273 (6th Cir. 1991) ......................................................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .................................... 14

*United States v. Bothra,*
No. 20-1364, 2020 WL 2611545 (6th Cir. 2020)............................................ 12

*United States v. Brigham,*
569 F.3d 220 (5th Cir. 2009) ......................................................... 15

*United States v. Grady,*
818 F. App'x 86 (2d Cir. 2020) ....................................................... 11

*United States v. Roberts,*
No. 3:98-CR-121, 2007 WL 30889 (E.D. Tenn. 2007)...................................... 14

*United States v. Stone,*
608 F.3d 939 (6th Cir. 2010) .......................................................... 9

*United States v. Storme,*
83 F.4th 1078 (7th Cir. 2023)......................................................... 12

*United States v. Watson,*
475 F. App'x 598 (6th Cir. 2012).................................................... 11

## Statutes

18 U.S.C. § 3142(i) ................................................................... 15

18 U.S.C. § 3142(f)(2) .......................................................... 5, 6, 11

18 U.S.C. §3143(a)(1) ................................................................ 11

**TABLE OF AUTHORITIES**
(continued)

**Page**

## Other Authorities

Criminal Rule 32.1 ............................................................................................... 5

Federal Rule of Criminal Procedure Rule 32.1(a)(6) ......................................... 10

## JURISDICTIONAL STATEMENT

This appeal follows the district court's order determining that it did would not reconsider Appellant Omar's request for release pending the disposition of his supervised release revocation proceedings. (R.59, Order PAGE ID # 266)  A notice of appeal from this order was mailed by Omar on December 29, 2025, and received by this Court on January 5, 2026. (R.68, Notice of Appeal PAGE ID # 361-62) Pursuant to FRAP Rule 4(d), the notice was transferred to the district court on January 15, 2026. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3145.

## STATEMENT REGARDING ORAL ARGUMENT

Because this matter is on an expedited docket, counsel for Omar does not request oral argument.

Respectfully requested,

/s/

Kevin M. Schad
Attorney for Appellant

## STATEMENT OF THE ISSUES

1. The district court erred in not considering Omar's new evidence as a basis for release pending disposition of his supervised release revocation proceedings.

## STATEMENT OF THE CASE

On August 3, 2022, Appellant Nathan Omar entered into a plea agreement in which he agreed to plead guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (R.25, Plea Agreement PAGE ID # 55)  As part of the plea, Omar agreed that on June 2, 2021, Buena Vista Township Michigan police officers found Omar in possession of a Glock .40 Caliber with an extended magazine. (PAGE ID # 58) On November 10, 2022, Omar was sentenced to 37 months incarceration, to be followed by 3 years supervised release. (R.40, Judgment PAGE ID # 186)

Omar served his time in the BOP, and on January 17, 2024, was released to begin his term of supervised release. (R.43, Petition for Warrant PAGE ID # 197) On June 17, 2025, a Petition for Warrant was issued by the district court for Omar's arrest, alleging the following supervised release violations: (1) that Omar had committed a state crime (assault with the intent to murder); and (2) that Omar had left the district without permission. (R.43, Petition PAGE ID # 199)

At the time the Petition was filed, Omar was in state custody in pretrial detention for the state charges alleged in violation 1.  Omar sent a pro-se letter to the district court, asking that he be writted out from state custody to

3

begin the supervised revocation procedures. (R.45, Letter PAGE ID # 201)  A writ was issued, and on September 15, 2025, the magistrate court held an initial appearance on the revocation. Omar appeared with counsel and waived a preliminary hearing on the revocation charges. The defense requested that the court consider release. After hearing from both parties, the magistrate court found:

> at some point in time, he left for Texas, and he would have known how to get permission. He had gotten it in the past, and this time he did not get permission and instead went on his own without letting the probation officer know about it. So it's pretty impossible under that situation to say he's not likely to flee. And, in addition, when it comes to the danger that he may pose, even though defense counsel has good arguments that I'm sure will be made in the Saginaw County case, at this point in time, all we've got is a probable cause finding anyway so far that it – that he has been at least charged with assault with intent to murder, which is one of the most – you know, highest, most violent crimes you can be charged with. And so there's at least probable cause to believe that he committed that offense, even though the defense has good arguments that they, I'm sure, will utilize in state court. But at this point in time, since the state charge is of such a violent nature, it's pretty impossible to show by clear and convincing evidence that there is – that he's not likely to pose a danger if he were to be released.

> (R.75, Initial Hearing PAGE ID # 387-88)

The magistrate judge then issued a detention order, finding that Omar was not amenable to release. (R.52, Order of Detention PAGE ID # 211)

On November 5, 2025, counsel for Omar moved to reconsider the detention order. (R.55, Motion PAGE ID # 222)  Counsel asserted that the underlying state charges had resulted in a mistrial based on a State witness utilizing a "cropped" video which omitted evidence that supported Omar's self-defense claim, and that after the mistrial Omar had been released on an personal recognizance bond. (PAGE ID # 224)  In addition, counsel presented evidence that while Omar did go outside the Eastern District of Michigan, he did intend to immediately return. Counsel presented a return bus ticket as proof. (PAGE ID # 230)  The Government opposed this request, arguing first that there is "no mechanism or standard for reopening a detention hearing" for supervised release revocations. (R.57, Response in Opposition PAGE ID # 257)  Alternatively, the Government argued that the "new" evidence was not new, and did not warrant reconsideration of the detention decision. (PAGE ID # 259)

On December 4, 2025, the district court denied Omar's request without a hearing. The district court determined that "[n]either Criminal Rule 32.1 nor the statutes that it references permit reopening a detention hearing in an SRV case." (R.59, Opinion and Order PAGE ID # 271)  The court ultimately found "[b]ut because due process is delicate, some courts have applied the §

3142(f)(2) standards to SRV cases . . . Out of caution—and theoretically erring on the side of providing opportunity for more process than is due—this Court will too." (PAGE ID # 272)

Turning to the merits, the court found that a motion to reopen the detention decision required two "conditions" – first, that there was new information, unknown to the defendant at the time of the first detention hearing. Second, that the information has "material bearing" on the decision for release. The district court determined:

> Here, Defendant has not satisfied both conditions. Up front, the only new information that Defendant presents is that a mistrial was granted in his state case; all other information that he presents, like the bus ticket, existed at the time of the initial hearing, and Defendant incorporated it into his argument. Compare ECF No. 49 at 6:03–8:27, 11:07–50 with ECF Nos. 56; 56-2; 56-3. Even assuming the mistrial in Defendant's state case could materially change the finding of danger, it does not materially bear on whether he is a flight risk such that it could provide clear and convincing evidence that he will not flee. As a result, Defendant has not demonstrated cause to reopen his detention hearing. So Defendant's Motion for Revocation of Detention Order, ECF No. 56, will be denied.

(R.59, Order PAGE ID # 272)

On the day before this order was issued, defense counsel moved to be dismissed from the case, citing a breakdown in the attorney-client relationship.

6

(R.58, Motion to Withdraw PAGE ID # 262)  The court held a hearing on this motion on December 17, 2025, and on December 22, 2025, issued an order granting counsel's motion to withdraw. (R.64, Order PAGE ID # 296)

On December 29, 2025, Omar, acting pro-se, mailed to the Sixth Circuit a document entitled "Emergency Motion for Release Pending Appeal and Appeal from Order Denying Revocation of Detention." (R.68, Notice of Appeal PAGE ID # 355)  This Court received this document on January 5, 2026, and transmitted this to the district court as a notice of appeal on January 15, 2026. (PAGE ID # 363)

## SUMMARY OF THE ARGUMENT

### I.

Omar presented new evidence – that his state trial had resulted in a mistrial and that based on the State's actions at trial, the state court issued a personal recognizance bond – which supported the reconsideration of release pending Omar's supervised release revocation proceeding.

# ARGUMENT

## I. THE DISTRICT COURT SHOULD HAVE RELEASED OMAR PENDING HIS REVOCATION, AS NEW EVIDENCE PROVIDED CLEAR AND CONVINCING PROOF THAT HE WAS ENTITLED TO RELEASE

The district court should have permitted Omar's release pending his supervised release revocation proceeding. The underlying state charges which formed the large part of revocation allegations had resulted in a mistrial based on a state witness's manipulation of evidence, and as a result, Omar was released from state custody pending a new trial. These new facts, along with several other considerations, warranted reconsideration of release.

### Standard of Review

This Court reviews "the district court's factual findings for clear error, but we consider mixed questions of law and fact—including the ultimate question whether detention is warranted—de novo." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

Appellant Nathan Omar is facing a supervised release revocation largely because of state charges which are pending against him. It was these charges, as well as their nature, that led the magistrate court to deny Omar release pending the revocation hearing, finding Omar "has been at least charged with

assault with intent to murder, which is one of the most – you know, highest, most violent crimes you can be charged with. And so there's at least probable cause to believe that he committed that offense, even though the defense has good arguments that they, I'm sure, will utilize in state court. But at this point in time, since the state charge is of such a violent nature, it's pretty impossible to show by clear and convincing evidence that there is – that he's not likely to pose a danger if he were to be released." (R.75, Initial Hearing PAGE ID # 387-88)  But after this finding, a significant event occurred. Omar went to trial in state court on these charges, and a mistrial occurred, due to a state witness manipulating video evidence. That missing video helped prove Omar's claim of self-defense. The video used by the State witness "failed to expose that there were weapons (knives) held by the 'victim' and a friend of the victim's at the scene." (R.55, Motion PAGE ID # 223)  This new fact was unknown at the time of the initial detention hearing, and provides material evidence that Omar is not a danger to the community. The district court thus erred in not granting Omar's release pending his revocation hearing.

Omar's initial detention was governed by Federal Rule of Criminal Procedure Rule 32.1(a)(6), which states in pertinent part that in deciding whether to detain someone pending a supervised release revocation hearing:

> The magistrate judge may release or detain the person under 18 U.S.C. §3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person.

Thus, pursuant to the clear language of the Rule, Omar bore the burden of proving, by clear and convincing evidence, that he was unlikely to flee or pose a danger to the community at large or a specific person. *United States v. Grady*, 818 F. App'x 86, 88 (2d Cir. 2020). To re-open the magistrate judge's decision that he had failed to meet this burden, Omar needed to meet the standard set forth in 18 U.S.C. § 3142(f)(2). "A detention hearing may be reopened if 1) new information exists that was unknown to the movant at the time of the hearing; and 2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012). Omar met this standard.

First, Omar presented material evidence unknown at the time of the initial hearing. When a district court reconsiders a detention decision, "a defendant must first establish that the information [relied upon to reconsider

11

detention] was not previously known to him." *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *1 (6th Cir. 2020). Here, the fact that the state trial ended in a mistrial; that the State witness had manipulated a video to discount Omar's credible self-defense claims; and that as a result Omar was given a personal recognizance bond would have made a difference in the determination of whether or not Omar was a current danger to the community or others.

In denying this argument, the district court assumed that although the mistrial arguably changed the calculus on danger to the community (R.59, Order PAGE ID # 272), it could have no effect on the calculation of whether or not Omar was a flight risk. But "the plain import of the term 'flight' connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction." *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023). Here, Omar presented the court with evidence, via a return bus ticket to Michigan, that he expected to face his charges. (R.55, Motion Exhibit B PAGE ID # 230)  His departure from the district, while regrettable, did not seek to evade prosecution, but to sell a vehicle to raise funds to further his defense. (R.55, Motion PAGE ID # 224)

Further, the fact of the mistrial would be evidence of a lack of intention to flight. If, as Omar suggests, his state case will be dismissed or otherwise favorably disposed of, his exposure in federal court would be significantly reduced. And this would give him or any rationale defendant a reason not to flee. Add to this that the state court provided Omar with a personal recognizance bond after the mistrial (R.55, Motion Exhibit A PAGE ID # 227), this new fact did reshape the issue of flight. Therefore, the district court erred in its assessment of the current flight risk.

The district court also determined that, other than the mistrial, it could consider no other evidence presented by Omar in support of his reconsideration.[1] But this is not accurate. To be sure, to re-open a detention hearing, the defendant must present new information unknown to him at the time of the initial hearing. But this does not mean that the court, in re-evaluating detention, can *only* consider that new information. Indeed, the way that new information dovetails with other facts known about the defendant is

---

Input[1] And once that door is opened, the court was free to consider the other arguments raised by Omar pro-se. Certainly, input from Omar's federal probation officer would be relevant to both the dangerousness and flight determinations. (R.65, Reply PAGE ID # 316)

a viable consideration for any court in determining whether release is
warranted.

In sum, Omar presented substantial new evidence warranting the
district court to not only re-open the detention decision, but also to grant
Omar's release pending the revocation proceedings.

As a final note, the district court correctly determined that it had
authority to consider Omar's reconsideration request (R.59, Order PAGE ID #
271), despite the Government's statutory argument that there was no basis to
do so. "[E]very order short of a final decree is subject to reopening at the
discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 935, 74 L. Ed. 2d 765 (1983),
Accord *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)("District courts
have inherent power to reconsider interlocutory orders and reopen any part of
a case before entry of a final judgment."). Moreover, as the district court
noted, 18 U.S.C. § 3142(f)'s provisions have been applied to the supervised
release revocation process by other courts. See, for example, *United States v.
Roberts*, No. 3:98-CR-121, 2007 WL 30889, at *2 (E.D. Tenn. 2007).
Additionally, not allowing a district court to review the magistrate's detention
decision, based on a lack of express language to that effect, would "render the

district court's review power illusory." *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009). And finally, 18 U.S.C. § 3142(i) expressly provides: [t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Thus, the district court has authority for all these reasons to reconsider a detention decision in the supervised release revocation context. The district court thus did not make an error in addressing Omar's reconsideration request on its merits.

Because Omar provided clear and convincing evidence that he was not a danger to the community and would not flee, the district court should have granted him release pending his revocation hearing. The failure to do so requires reversal of the district court's decision.

## CONCLUSION

For these reasons, Omar respectfully asks this Court to vacate the district court's December 4, 2025 order and remand for further proceedings consistent with this Court's decision.

Respectfully Submitted,

JOSEPH MEDICI
Federal Public Defender SDOH

/s/

Kevin M. Schad
Attorney for Appellant
Appellate Chief
Office of the Federal Public Defender
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
(513) 929-4834
Fax (513) 929-4842
Kevin_schad@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The relevant portions of the above brief contain 3400 words in Century Schoolbook (14-point) type. The word processing software used to prepare this brief was Microsoft Office 365.

/s/

Kevin Schad
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I electronically filed the above with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send notification of such filing to the following at their email addresses on file with the Court:

Assistant United States Attorney Katharine Hemann

/s/

Kevin Schad
Attorney for Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with 6 Cir. R. 30, Appellant designates as "Relevant District Court Documents" the documents below filed in the district court and available via that court's electronic CM/ECF system:

| District Court Docket Number | Page ID# | Description of Document |
|---|---|---|
| 1 | 1-2 | Indictment |
| 25 | 55-72 | Plea Agreement |
| 40 | 184-191 | Judgment |
| 43 | 197-199 | Petition for Warrant |
| 52 | 211-213 | Order of Detention |
| 55 | 222-237 | Motion to Reconsider Release w/exhibits |
| 56 | 238-254 | Amended Motion |
| 57 | 255-261 | Government Response in Opposition |
| 58 | 262-265 | Motion to Withdraw as Counsel |

| 59 | **266-273** | Opinion and Order |
|---|---|---|
| 64 | **296-297** | Order Granting Withdrawal of Counsel |
| 68 | **355-363** | Notice of Appeal |
| 75 | **376-389** | Transcript Hearing 9-15-25 |
| 76 | **390-395** | Transcript Hearing 12-17-25 |